IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>THE VEHICLE BEING UTILZIED BY MOSIAH LONG, A 2018 DODGE CHARGER BEARING PENNSYLVANIA REGISTRATION MLK-9339;<br>VIN: 2C3CDXAT7JH216211 | Magistrate No. 25-1189 |

## AFFIDAVIT FOR SEARCH WARRANT

I, Pete Glavach, being first duly sworn, hereby depose and state as follows:

1. I have been employed as a Police Officer with the Pittsburgh Bureau of Police (PBP) since 2007. I have been a Detective in the Narcotics and Vice Unit (N/V) with the Pittsburgh Bureau of Police (PBP) since September 2015 and currently assigned as a full-time federally deputized Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) at the Pittsburgh District Office (PDO), HIDTA Enforcement Group 61 since August 2020. Prior to my position as TFO with the DEA, I was employed as a uniformed police officer on the federal and state level of law enforcement, with my most recent/current employer as the Pittsburgh Bureau Police. I have been employed in a law enforcement capacity since November 2005. As a TFO and Detective, I have participated in numerous arrests for narcotic offenses, firearms offenses, and violent crimes. In addition, I have been the affiant on arrests and search warrants.

2. I have been trained at the Federal Law Enforcement Training Center in Glynco, GA and at the Pittsburgh Bureau of Police Academy in Pittsburgh, PA. Each provided extensive training that covered a wide array of topics, including federal criminal statutes, interviews and interrogations, drug identification, search and seizure, evidence handling, undercover training, search warrant applications and executions, arrest procedures, and numerous other investigative

1

techniques. I have experience conducting surveillance, analyzing telephone records, interviewing witnesses, and executing search and arrest warrants, amongst other investigative techniques. The investigations in which I have participated have resulted in the arrest and prosecution of individuals who have transported, received and/or distributed controlled substances, including heroin, fentanyl and crack cocaine, as well as the seizure of firearms, other illegal drugs, and proceeds from the sale of illegal drugs. I have also supervised the activities of informants who have provided information and assistance resulting in prosecution of drug offenders.

3. Through my training and experience, I have become familiar with methods of operation typically utilized by individuals who distribute illegal drugs. I know that it is common practice for drug traffickers to routinely utilize cellular phones, prepaid phones, calling cards, text messaging, counter surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, couriers, and other conspirators, for the purpose of insulating themselves from detection by law enforcement. I am aware through previous narcotics investigations, information obtained from confidential sources, and information obtained from other law enforcement officers, that it is common practice for individuals involved in the distribution of illegal drugs to subscribe to services in fictitious names to avoid law enforcement detection. These individuals often require the use of a telephone to negotiate times, places, schemes and methods for importing, possessing, concealing, and distributing controlled substances and for arranging the concealment of proceeds derived from the sale of illegal drugs.

4. As a Detective and TFO with the DEA, I have participated in numerous investigations involving the unlawful distribution and possession with the intent to distribute controlled substances, including cocaine, marijuana and heroin, in violation of Title 21, United States Code, Sections 841 and 846. These investigations have utilized undercover officers,

informants, cooperating sources, sources of information, physical surveillance, electronic surveillance, pen register analysis and telephone toll analysis.

5.      Through these investigations, and conversations with other agents and officers, I have become familiar with the methods used by traffickers to smuggle, store, and distribute drugs, collect and launder drug proceeds, and the sophisticated tactics that they routinely use in an attempt to thwart investigations.

6.      The information in this affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## THE SEARCH LOCATION

7.      This Affidavit of Probable Cause has been prepared and submitted as an application for, and affidavit in support of, search warrants to search the following Search Locations, for evidence of violations of Title 21, United States Code, Sections 841, 843, and 846 ("TARGET OFFENSES"), as described in Attachment B.:

   a. **SEARCH LOCATION**: the vehicle being utilized by Mosiah LONG, a 2018 Dodge Charger bearing Pennsylvania registration MLK-9339 (referred hereafter as the "**SUBJECT VEHICLE**").

8.      The above listed Search Location is described in Attachments A and will be referred to as the **SUBJECT VEHICLE**.

## PROBABLE CAUSE

9.      On July 7, 2025, at approximately 2:10 P.M., Task Force Officer (TFO) Slatcoff and TFO Glavach were in the Mt. Washington area of the City of Pittsburgh investigating narcotics activity. Task Force Officers were utilizing an unmarked police vehicle which is fully equipped

3

with emergency lights and sirens. Task Force Officers were attired in police vests with visible "Police" insignia.

10. While situated on West Liberty Ave., at the exit of the outbound Liberty Tunnels, our attention was drawn to a black in color, Dodge Charger bearing Pennsylvania registration MLK-9339 which was exiting the Liberty tunnel. Task Force Officers observed the driver of this vehicle maneuver the Charger from the far-left lane of travel, into the far right, turning lane only. The lanes within the Liberty Tunnel and at the immediate outbound exit of the tunnel restrict lane changes. Task Force Officers also noted that the Charger vehicle had extreme window tint on the front and rear, passenger side windows as well as on the rear window. The tint on the Charger was darkened to the extent that Task Force Officers were unable to see into the interior compartment of the Charger.

11. After maneuvering the Charger into the far right, turning lane, the driver of the Charger proceeded onto the ramp leading to the intersection of Saw Mill Run Blvd. at East Warrington Avenue. The operator of the vehicle turned right onto E. Warrington Avenue then turned left onto Boggs Avenue at which time TFO Glavach (driver) activated the emergency lights and sirens on our police vehicle. The driver of the vehicle initially refused to stop and continued driving on Boggs Avenue for approximately two city blocks. The driver proceeded through the intersection of Southern Ave. at Boggs Avenue before finally pulling to a stop. During this time, Task Force Officer Slatcoff radioed Allegheny County Dispatch and requested additional backup.

12. TFO Slatcoff approached the driver's position of the vehicle while announcing his presence as Task Force Officer Glavach approached the passenger side of the vehicle. TFO Slatcoff made contact with the driver and lone occupant of the vehicle who would later be identified as Mosiah LONG through the now open, front driver window. LONG was advised of

the reason for the traffic stop which LONG acknowledged. During this initial encounter, both TFO Slatcoff and Glavach detected the strong odor of fresh marijuana emanating from within the vehicle. Upon request, LONG provided TFO Slatcoff with his driver's license which was found to be an ignition interlock license. TFO Slatcoff noted that the Charger vehicle was not equipped with an ignition interlock system and when confronted on this, LONG stated that the interlock system is equipped in a separate vehicle.

13. During this encounter with LONG, TFO Slatcoff further noted that Longs right, jean shorts pocket was weighted down and unnaturally protruding outward. TFO Slatcoff also noted a piece of metal protruding from this pocket. Based upon these factors, TFO Slatcoff requested LONG step out of the vehicle. Once out of the vehicle, TFO Slatcoff requested LONG place his hands on top of the car to submit to a pat down based upon the previous observations that LONG may be armed. LONG initially refused these requests and began moving his hands downward toward his waistband area. Based upon the entirety of the circumstances including LONG's initial refusal to pull over, the extreme dark window tint of the car and Task Force Officers visual indications that LONG may be armed, TFO Slatcoff requested LONG place his hands on the car to submit to a pat down. LONG initially refused this request and began moving his hands down toward his waistband area. Due to these circumstances, TFO Slatcoff placed LONG in handcuffs during which time he was told that he was only being detained. During the subsequent pat down, the metal item was found to be a long lighter.

14. During this encounter, LONG was confronted regarding the odor of marijuana emanating from the vehicle. LONG stated that there was a small amount of marijuana within the vehicle. LONG was read his Miranda Warnings verbatim from a pre-printed card by TFO Glavach which LONG acknowledged and agreed to speak with Task Force Officers about the incident.

LONG was again confronted on the odor of marijuana emanating from the vehicle. LONG stated that he was prescribed a medical marijuana card, however he did not have it in his possession. LONG further acknowledged that the small amount of marijuana he had within the vehicle was not within a container from a legal dispensary as required by law.

15.    Based upon LONG's verbal admittance to illegally possessed marijuana being within the vehicle, TFO Slatcoff conducted a probable cause search of his person which yielded a large sum of US currency from LONG's front right, shorts pocket. LONG would later state that the amount of money was $2,800.00. Upon a further search of LONG's right, coin pocket, TFO Slatcoff located a small blue, pressed pill. TFO Slatcoff asked Long if this pill was "x" (ecstasy) which the male responded in the affirmative. A further search of the male's pockets revealed two (2) crumpled up, white shipping labels.

16.    After recovering the white shipping labels, TFO's asked LONG why the labels were in his pockets which he reported were just trash. TFO Glavach and Slatcoff also observed several large boxes in the rear seat of the vehicle which through investigators training and experience know that drug dealers will have large shipments of narcotics shipped in boxes then they would remove the labels in attempt to avoid detection and as a concealment method if they encounter law enforcement. These large boxes act as a convenient way to store their product. These concealment methods provide drug dealers with the ability to transport and store large amounts of narcotics for long amounts of time undetected.

17. A review of LONG's criminal history revealed the following felony drug convictions:

   a. Possession with Intent to Deliver a Controlled Substance, on or about November 21, 2016, at case number CP-02-CR-00138-2016, in the Court of Common Pleas, Allegheny County, Commonwealth of Pennsylvania; and

   b. Possession with Intent to Deliver a Controlled Substance, on or about November 21, 2016, at case number CP-02-CR-08950-2016, in the Court of Common Pleas, Allegheny County, Commonwealth of Pennsylvania

18. Furthermore, as described above, drug dealers will often use vehicles as their mobile "offices," conducting business from within their vehicle to avoid detection and/or observation by law enforcement or law-abiding citizens. I am also aware that drug dealers do this to avoid apprehension -- many criminals in the Pittsburgh-area, including drug dealers, are aware that PBP policy significantly restricts officers' ability to pursue fleeing vehicles; as a result, drug traffickers, and criminals in general, will often utilize vehicles in connection with their criminal activity.

19. In my training and experience, I know that drug dealers often are the targets of burglaries or robberies. Drug dealers will carry firearms or have someone with a firearm close by to protect them due to the dangerous nature of their criminal enterprise. Further, a lucrative and substantial drug business will bring attention to rival drug dealers who are looking to further their own criminal enterprise.

20. Based on all the information discussed herein, I believe that there is probable cause to believe that that evidence of violation(s) of Title 21, United States Code 841 will be found at the **SUBJECT VEHICLE.**

21. There is probable cause to believe that the **SUBJECT VEHICLE** is in the Western District of Pennsylvania. The **SUBJECT VEHICLE** is registered to LONG in Pennsylvania. According to Pennsylvania Department of Transportation (PENNDOT) records, LONG has a listed address 1731 E Carson Street P.O. Box 42293 Pittsburgh, PA 15203.

22. Based on the foregoing, I believe that probable cause exists and believes that the **SUBJECT VEHICLE** will contain evidence of violations of Title 21, United States Code, Section 841, that is, possession with intent to distribute and/or distribution of a controlled substance.

## CONCLUSION

23. Based upon the aforementioned, I submit that this affidavit supports probable cause that LONG has engaged in violations of Title 21 United States Code Sections 841(a), in the Western District of Pennsylvania, at the SEARCH LOCATIONS.

Respectfully Submitted,

*s/ Peter Glavach*
Peter Glavach, Task Force Officer
Drug Enforcement Administration

Sworn and subscribed before me, by telephone
Pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
This 7th day of July 2025.

_____
HONORABLE CHRISTOPHER B. BROWN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**Premises to be searched**: the vehicle being utilized by Mosiah LONG (the "**SUBJECT VEHICLE**"), a 2018 Dodge Charger Pennsylvania registration MLK-9339 (registered to Mosiah LONG of 1731 E. Carson Street PO Box 42293 Pittsburgh, PA 15203), that located within the Western District of Pennsylvania at the time of the search for the items listed in Attachment B (depicted below in **Figure 1**).



**Figure 1:** 2018 Dodge Charger Pennsylvania registration MLK-9339

## ATTACHMENT B

## ITEMS TO BE SEARCHED AND SEIZED

For the **SEARCH LOCATION** for evidence of illegal drug-trafficking, in violation of Title 21, United States Code 841, including, but not limited to the following:

a. controlled substances, to include marijuana;

b. paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances;

c. books, records, receipts, notes, ledgers, and other papers relating to the distribution of controlled substances and to monetary transactions involving the proceeds from the sale of controlled substances;

d. personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances, money laundering, and the criminal use of communication facilities;

e. cash, currency, and records relating to the generation of income from the sale of controlled substances and the expenditure of such income, including money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, and check registers, as well as consumer items such as expensive televisions and other electronic equipment, high-end vehicles, precious metals such as gold and silver, and precious gems such as diamonds (this evidence often is located in a safe) -- unexplained wealth is probative evidence of crimes motivated by greed, including trafficking in controlled substances;

f. documents indicating travel in interstate and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts and telephone bills;

g. computers, cellular telephones, palm pilots, and/or other electronic media utilized for communication and data-saving purposes, as well as documents relating thereto;

h. firearms, ammunition, and other dangerous weapons; and

i. identification evidence and/or indicia (such as cancelled mail, deeds, leases, rental agreements, photographs, bills, diaries, keys, and identification documents) which tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises.